# COURT OF APPEALS OF VIRGINIA

Present: Senior Judges Annunziata, Clements and Petty

RUSSELL CLINTON HUNTLEY

v.      Record No. 0663-22-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*]
PER CURIAM
DECEMBER 29, 2022

FROM THE CIRCUIT COURT OF ROCKBRIDGE COUNTY
Christopher B. Russell, Judge

(Michael J. Hallahan, II, on brief), for appellant. Appellant
submitting on brief.

(Jason S. Miyares, Attorney General; Rebecca M. Garcia, Assistant
Attorney General, on brief), for appellee. Appellee submitting on
brief.

Russell Clinton Huntley's counsel filed a brief on his behalf accompanied by a motion for

leave to withdraw in accordance with *Anders v. California*, 386 U.S. 738, 744 (1967). Huntley's

counsel argues that insufficient evidence supports the jury verdict convicting Huntley of

attempting to possess with the intent to distribute a Schedule I/II controlled substance, in

violation of Code § 18.2-248. A copy of the *Anders* brief has been furnished to Huntley with

sufficient time for him to raise any matter that he chooses. Huntley has filed a *pro se*

supplemental brief raising a variety of other issues. After examining the briefs and record in this

case, the panel has determined that this appeal is wholly frivolous and unanimously holds that oral

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

UNPUBLISHED

argument is unnecessary because "the appeal is wholly without merit."[1]  Code § 17.1-403(ii)(a); Rule 5A:27(a).  Consequently, we affirm the trial court's judgment.[2]

## BACKGROUND[3]

A grand jury indicted Huntley with conspiring to manufacture, sell, give, distribute, or possess with intent to distribute ten or more grams of methamphetamine or twenty grams of a substance containing methamphetamine, and a jury trial was scheduled on that charge.  Two days before trial, the grand jury indicted Huntley with attempting to possess with the intent to distribute methamphetamine.  That charge was joined with the original charge for trial, and Huntley did not object.

Read in the light most favorable to the Commonwealth, the evidence at Huntley's jury trial was as follows.[4]  On June 30, 2020, Virginia State Police Officer Ben Caldwell spoke with an individual who had been arrested, following a traffic stop, for possession with intent to distribute methamphetamine.  That individual, later identified as "Jay," told Officer Caldwell that he was delivering three ounces of methamphetamine to someone he knew as "Old Man."[5]

---

[1] We also note that the parties waived oral argument in this case.  *See* Code § 17.1-403(ii) (permitting the parties to waive argument).

[2] The final sentencing order erroneously reflects that Huntley was found guilty of possession with intent to manufacture a Schedule I/II controlled substance.  The record, however, reflects that Huntley was convicted of attempted possession with the intent to distribute a Schedule I/II controlled substance.  Accordingly, this matter is remanded to the trial court for the sole purpose of amending the final sentencing order to reflect that Huntley was found guilty of attempted possession with the intent to distribute a Schedule I/II controlled substance.

[3] "In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party [below]."  *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).

[4] Huntley did not raise any challenge to the jury's composition.

[5] Huntley successfully objected to Officer Caldwell testifying that the substance Jay possessed was actually methamphetamine.  The Commonwealth presented no evidence about whether Jay actually had methamphetamine.

Using Jay's cell phone Officer Caldwell texted the number associated with Old Man and asked if he was willing to meet Jay's "uncle" in a Walmart parking lot. The individual on the other end[6] agreed and stated that he would arrive in a blue Nissan. The text messages discussed the place and time of the meeting but did not explicitly reference methamphetamine. The Commonwealth did not submit the text messages into evidence at trial but relied on Officer Caldwell's characterization of the messages.

While the police waited for Old Man, Rockbridge County Sheriff's Investigator Phillip Flint purchased five pounds of Epsom salt, which he used to make a bag of imitation methamphetamine. He placed the bag in a Wheat Thins box and put the box in a yellow bag. He then gave the yellow bag and recording equipment to Botetourt County Sheriff's Sergeant David Anderson, the undercover officer who would portray Jay's "uncle." Sergeant Anderson used that equipment to record the offense; portions of those recordings were played for the jury at trial but not admitted into evidence or made part of the record.

Sergeant Anderson, driving a pickup truck, parked at the Walmart in view of other officers. Officer Caldwell observed a blue Nissan get gas and then drive to the Walmart. He identified Huntley at trial as the man in the front passenger seat of the Nissan. The Nissan pulled behind Sergeant Anderson's truck; Huntley exited the Nissan and entered the passenger seat of Sergeant Anderson's vehicle. Sergeant Anderson and Huntley drove around the parking lot followed by the Nissan. Sergeant Anderson asked Huntley if he had the $1,600 they had agreed on, and Huntley produced the money wrapped in a rubber band. Sergeant Anderson then handed the yellow bag to Huntley, informing him that it was "some fire shit, be careful with it." Sergeant Anderson testified that "on the street a lot of people refer to [methamphetamine] as

---

[6] Huntley objected to Officer Caldwell testifying definitively that Huntley was texting as Old Man. The trial court clarified that Officer Caldwell testified only that he was texting "someone."

fire." He never took the substance out of the box or showed it to Huntley, and Huntley never looked inside the box. Nor did Huntley explicitly refer to methamphetamine or any of its common street names. Sergeant Anderson parked, Huntley exited the vehicle, and other officers arrested him.

Huntley waived his *Miranda*[7] rights, and Officer Flint interviewed him.[8] Huntley initially claimed that he was helping out a friend and was going to pick up a quarter pound of marijuana. Later, when Officer Flint asked about methamphetamine, Huntley admitted that he was going to pick up three ounces of methamphetamine from Jay's uncle and deliver it to a man named Tory in Charlottesville.

Huntley testified that he intended to purchase marijuana, not methamphetamine. He believed that the bag contained marijuana and did not know what Sergeant Anderson meant when he mentioned "fire." He explained that he told Officer Flint that he was planning on picking up methamphetamine because he was "just all confused. It had been all day. They wouldn't let me go eat. Wouldn't let me . . . go to the cell or nothing. They just kept me in there and I don't know, I just got confused." He further testified that the officers did not like his answers about marijuana and told him that it was methamphetamine "[o]ver and over and over again" until he agreed. He admitted that he did not know anybody in Charlottesville named Tory and had lied about that part.

After the trial court denied Huntley's motion to strike and renewed motion, the jury convicted him of attempting to possess with the intent to distribute methamphetamine.[9] The trial

---

[7] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[8] This interview was also recorded and portions of it were played for the jury at trial but not entered into evidence or included as part of the record.

[9] The jury acquitted Huntley of the conspiracy charge.

court sentenced Huntley to eight years' imprisonment with five years and two months suspended. Huntley appeals.

## ANALYSIS

### I. Sufficiency of the Evidence

Huntley, through counsel, argues that the evidence was insufficient to support his conviction. "On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

The only element of the offense that Huntley disputes is that he intended to possess methamphetamine rather than marijuana. Based on the evidence presented at trial, however, a reasonable fact finder could conclude that Huntley intended to possess methamphetamine. Upon questioning, Huntley admitted to law enforcement that he intended to purchase three ounces of methamphetamine. Although he provided an explanation for that admission during trial, the jury could conclude that he was lying to conceal his guilt. *See Brown v. Commonwealth*, 75 Va. App. 388, 414 (2022) ("In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998))).

In a blue Nissan, Huntley appeared at the time and place as agreed in the text messages sent to Old Man using Jay's phone. When Sergeant Anderson, posing as Jay's uncle, asked Huntley if he had the $1,600 as he had agreed, Huntley produced money wrapped in a rubber band. Considering this evidence with Officer Caldwell's testimony that Jay said he was delivering three ounces of methamphetamine to Old Man, a reasonable fact finder could conclude beyond a reasonable doubt that Huntley was guilty of attempting to possess with intent to distribute methamphetamine.

## II. Huntley's *Pro Se* Arguments

Huntley raises a variety of arguments in his *pro se* supplemental brief.[10] Specifically, he argues that (1) he was denied due process because he was served with the indictment on the day of trial, had not had adequate consultation with his attorney, and was denied the right to cross-examine Jay, who did not testify, (2) references to the text messages between Officer Caldwell and Old Man were hearsay, (3) references to the substance recovered from Jay were hearsay because the Commonwealth did not submit laboratory analysis of the substance, (4) references to the substance in the yellow bag were hearsay because the Commonwealth did not submit laboratory analysis of that substance, (5) Huntley was denied his *Miranda* rights, and (6) Huntley received ineffective assistance of counsel.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "Rule 5A:18 requires a litigant to make timely and specific objections, so that the trial court has 'an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals.'" *Brown*

---

[10] Huntley's *pro se* supplemental pleading is styled "Motion and Order to Vacate Conviction."

*v. Commonwealth*, 279 Va. 210, 217 (2010) (quoting *West v. Commonwealth*, 43 Va. App. 327, 337 (2004)). "Specificity and timeliness undergird the contemporaneous-objection rule [and] animate its highly practical purpose." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019).

Huntley did not timely raise any of the allegations contained in his *pro se* pleading in the trial court. He did not raise any of the due process or *Miranda* objections he now raises on appeal.[11] Although he raised some objections to Officer Caldwell's testimony about the text messages and the substance recovered from Jay, he did not raise any hearsay objections. Finally, Huntley informed the trial court that he was satisfied with his attorney's service and did not raise any concerns about the effective assistance of counsel.[12] Accordingly, Huntley has not preserved for appellate review the claims he asserts in his *pro se* supplemental pleading. He does not invoke any of the exceptions to Rule 5A:18, and this Court does not do so sua sponte. *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc).

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment and grant the motion for leave to withdraw. *See Anders*, 386 U.S. at 744. This Court's records shall reflect that Russell Clinton Huntley is now proceeding without the assistance of counsel in this matter and is representing himself on any further proceedings or appeal.

*Affirmed and remanded.*

---

[11] In fact, Huntley testified that he waived his *Miranda* rights.

[12] This argument raises a separate problem with Huntley's *pro se* supplemental brief; it fails to conform with Rule 5A:20. Most importantly, Huntley provides no argument relating to any of his claims, in violation of Rule 5A:20(e). Such failure is substantial. For example, we are unable to discern why Huntley believes his counsel to be ineffective; he seems to believe so based on counsel's motion for leave to withdraw on appeal. In any event, claims of ineffective assistance of counsel are not cognizable on appeal. *Vay v. Commonwealth*, 67 Va. App. 236, 260 (2017) (citing *Dowdy v. Commonwealth*, 278 Va. 577, 591 (2009)).